J-S09008-26

2026 PA Super 112

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES CARUSO | : | |
| | : | |
| Appellant | : | No. 1216 EDA 2025 |

Appeal from the Judgment of Sentence Entered January 23, 2025
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002474-2023

BEFORE: MURRAY, J., LANE, J., and STEVENS, P.J.E.[*]

OPINION BY MURRAY, J.: **FILED JUNE 1, 2026**

James Caruso (Appellant) appeals from the judgment of sentence imposed after the trial court convicted him of one count each of carrying a firearm without a license, 18 Pa.C.S.A. § 6106(a)(1), and carrying a firearm on public streets in Philadelphia, **id.** § 6108. Appellant challenges the constitutionality of sections 6106 and 6108. After careful review, we affirm.

Pertinently, Appellant was 18 years old at the time of the offenses, and did not have a license to carry a firearm. **See** N.T., 11/8/24, at 37. The trial court summarized the underlying facts as follows:

On December 11, 2022, at approximately 4:30 a.m., [Philadelphia Police] Officer Domenico Marsico [(Officer Marsico)] and his partner, Officer Haselbarth, were patrolling the 4700 block of North Frankford Ave[nue, in the City of Philadelphia,] when they heard two gunshots coming from the area. From their vehicle,

_____

[*] Former Justice specially assigned to the Superior Court.

the officers observed Appellant holding a firearm, standing over Joseph Anthony Ceballos-Pagan [(the victim)], and witnessed [Appellant] fire one shot into the [victim's] chest as he lay on the sidewalk. After firing the shot, Appellant fled the scene with the weapon, crossing the street directly in front of the officers' patrol car. Officer Marsico subsequently ordered Appellant to stop, after which Appellant threw his firearm onto the sidewalk and continued running northbound on Frankford Avenue. After a brief pursuit and a second order from Officer Marsico to stop, Appellant surrendered and was placed in custody. N.T., 11/8/24, at 16-19.

After Appellant was taken into custody, Officer Haselbarth began to render aid to [the victim] until [Southeastern Pennsylvania Transit Authority (SEPTA)] officers arrived to transport him to the hospital, where [the victim] died soon after. Officer Haselbarth also located the [hand]gun[,] which Appellant discarded as he ran from the scene. *Id.* at 19-20. While in custody, Appellant informed officers that there had been an altercation between [the victim] and himself, during which Appellant claimed [the victim] had drawn a knife on him. … *Id.* at 26-27.

Trial Court Opinion, 7/1/25, at 1-2.[1]

The Commonwealth subsequently charged Appellant with the above firearms offenses, as well as one count each of criminal homicide and possessing an instrument of crime (PIC).[2]

As this appeal focuses on sections 6106 and 6108, we detail their language at the outset. Section 6106(a) provides as follows:

---

[1] SEPTA surveillance video captured the altercation, which showed Appellant removing a concealed handgun from his person and shooting the victim. *See* Exhibit C-28 (surveillance video); *see also* N.T., 11/8/24, at 10-11 (defense counsel describing the surveillance video as showing Appellant "t[aking] out a gun"), 50 (defense counsel arguing Appellant "pulled a gun" after the victim threatened Appellant with a knife).

[2] 18 Pa.C.S.A. §§ 2501, 907.

**(a) Offense defined.**--

(1) Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

(2) A person who is otherwise eligible to possess a valid license under this chapter but carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license and has not committed any other criminal violation commits a misdemeanor of the first degree.

18 Pa.C.S.A. § 6106(a); *see also id.* § 6106(b) (enumerating 16 exceptions to subsection (a), identifying circumstances under which individuals carrying a firearm without a license do not commit an offense).[3]

Section 6108 provides as follows:

No person shall carry a firearm, rifle or shotgun at any time upon the public streets or upon any public property in a city of the first class unless:

(1) such person is licensed to carry a firearm; or

(2) such person is exempt from licensing under section 6106(b) of this title (relating to firearms not to be carried without a license).

*Id.* § 6108. "Philadelphia is the only city of the first class in Pennsylvania[.]"

*Commonwealth v. Sumpter*, 340 A.3d 977, 980 (Pa. Super. 2025).

_____

[3] Neither party contends that any of the subsection (b) exceptions apply to Appellant.

- 3 -

Appellant's challenges to sections 6106 and 6108 involve their interplay with section 6109, which provides, in pertinent part, as follows:

> **(a) Purpose of license.**--A license to carry a firearm shall be for the purpose of carrying a firearm concealed on or about one's person or in a vehicle throughout this Commonwealth.
>
> **(b) Place of application.**--*An individual who is <u>21 years of age or older</u> may apply to a sheriff for a license to carry a firearm concealed on or about his person or in a vehicle within this Commonwealth*….

18 Pa.C.S.A. § 6109(a)-(b) (emphasis added).

On October 31, 2024, Appellant filed a motion to dismiss the firearms offenses, arguing sections 6106 and 6108 violate the right to bear arms and the right to equal protection of those aged 18-20, under both the United States and Pennsylvania Constitutions. Motion to Dismiss, 10/31/24, ¶ 4(a)-(c).[4] Relying on **New York State Rifle & Pistol Assoc. v. Bruen**, 597 U.S. 1 (2022), Appellant argued there is no historical tradition of firearm regulation restricting 18-to-20-year-olds' Second Amendment right to bear arms. Memorandum in Support of Motion to Dismiss, 10/31/24, at 2-6. Appellant

---

[4] Appellant additionally argued that because section 6108 applies only to Philadelphia, it violates Article III, Section 32 of the Pennsylvania Constitution. **See** Motion to Dismiss, 10/31/24, ¶ 4(d); **see also** Memorandum in Support of Motion to Dismiss, 10/31/24, at 12-13. Article III, Section 32 provides that "[t]he General Assembly shall pass no local or special law in any case which has been or can be provided for by general law and specifically the General Assembly shall not pass any local or special law," *inter alia*, "[r]egulating the affairs of counties, cities, townships, wards, boroughs or school districts." PA. CONST. art. III, § 32. Appellant abandoned this claim on appeal, and advances no argument under Article III, Section 32. **See generally** Appellant's Brief; Appellant's Statement of Errors Complained of on Appeal, 2/13/25.

further argued the right to bear arms set forth in the Pennsylvania Constitution is "even stronger" than the Second Amendment. *Id.* at 6. Finally, Appellant asserted sections 6106 and 6108 violate equal protection guarantees by treating 18-to-20-year-olds differently than adults 21 and older; and section 6108 separately violates equal protection guarantees by treating 18-to-20-year-olds in Philadelphia differently than 18-to-20-year-olds elsewhere in Pennsylvania. *Id.* at 10-11.

On November 6, 2024, the Commonwealth filed a response opposing Appellant's motion to dismiss the firearms charges. *See* Commonwealth's Response to Motion to Dismiss, 11/6/24. Appellant waived his right to a jury trial, and the matter was scheduled for a non-jury trial on November 8, 2024. On that date, before trial commenced, the trial court denied Appellant's motion to dismiss the firearms charges. *See* N.T., 11/8/24, at 4-5.

At the trial's conclusion, the trial court convicted Appellant of the firearms offenses and acquitted him of homicide and PIC. On January 23, 2025, the trial court imposed an aggregate sentence of 11½ to 23 months' imprisonment, followed by 4 years' probation.

Appellant filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) statement. The trial court filed an opinion under Rule 1925(a). Appellant presents four questions for our review:

> 1. Because [section] 6109 requires an individual to be at least 21 years old to obtain a license to publicly carry a firearm and sections 6106 and 6108 bar public carry without a license, are

- 5 -

they not in violation of Second Amendment rights as applied to 18-to-20-year-olds?

2. Does not the Pennsylvania Constitution['s] guarantee of a right to bear arms and to self-defense provide an independent basis for holding that [sections] 6106 and 6108 are unconstitutional as applied to 18-to-20-year-olds?

3. Is not [section] 6108 facially in violation of the Second Amendment because it makes it a crime to publicly carry a firearm in Philadelphia?

4. Do sections 6106 and 6108 … violate the equal protection rights of the United States and Pennsylvania Constitutions facially, and as applied to 18-to-20-year-olds?

Appellant's Brief at 2-3 (issues reordered; some capitalization and punctuation modified).

The constitutionality of a statute

is a pure question of law, over which our standard of review is *de novo*, and our scope of review is plenary. Statutes are presumed to be constitutional, and a challenger bears the burden of establishing that their provisions clearly, palpably, and plainly violate the Constitution. A statute is facially unconstitutional only where no set of circumstances exists under which the statute would be valid. In contrast, an as-applied constitutional challenge does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right.

*Commonwealth v. Shifflett*, 335 A.3d 1158, 1164-65 (Pa. 2025) (citations and quotation marks omitted).

Before addressing Appellant's issues, we review the United States Supreme Court's relevant jurisprudence concerning the right to bear arms.

The Second Amendment provides as follows: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep

and bear Arms, shall not be infringed." U.S. Const. amend II. In *D.C. v. Heller*, 554 U.S. 570 (2008), the United States Supreme Court held that the Second Amendment "guarantee[s] the individual right to possess and carry weapons" for self-defense, unconnected to militia service. *Id.* at 592. The *Heller* Court struck down a District of Columbia law that "totally ban[ned] handgun possession in the home" and "require[d] that any lawful firearm in the home be disassembled or bound by a trigger lock at all times, rendering it inoperable." *Id.* at 628. Significantly, *Heller* recognized that

> the right secured by the Second Amendment is not unlimited. From Blackstone[5] through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.

*Id.* at 626-27 (footnote added). In *McDonald v. City of Chicago*, 561 U.S. 742 (2010), the Supreme Court held that the Second Amendment right to keep and bear arms applies to the states by operation of the Fourteenth Amendment. *Id.* at 750.

In *Bruen*, the Supreme Court struck down New York State's public-carry licensing regime, under which New York "issue[d] public-carry licenses only when an applicant demonstrate[d] a special need for self-defense." *Bruen*, 597 U.S. at 11. As held by the *Bruen* Court, "consistent with *Heller* and

_____

[5] W. Blackstone, Commentaries on the Laws of England (1765).

*McDonald*, [] the Second and Fourteenth Amendments protect an individual's

right to carry a handgun for self-defense outside the home." *Id.* at 10.

As recognized by the Supreme Court in *Bruen*, *Heller* employed a

"methodology centered on constitutional text and history," and rejected the

application of "any means-end test such as strict or intermediate scrutiny."

*Id.* at 22. The *Bruen* Court

> reiterate[d] that the standard for applying the Second
> Amendment is as follows: When the Second Amendment's plain
> text covers an individual's conduct, the Constitution
> presumptively protects that conduct. The government must then
> justify its regulation by demonstrating that it is consistent with
> the Nation's historical tradition of firearm regulation. Only then
> may a court conclude that the individual's conduct falls outside
> the Second Amendment's "unqualified command."

*Id.* at 24 (citation omitted). This test

> requires courts to assess whether modern firearms regulations are
> consistent with the Second Amendment's text and historical
> understanding. In some cases, that inquiry will be fairly
> straightforward. For instance, when a challenged regulation
> addresses a general societal problem that has persisted since the
> 18th century, the lack of a distinctly similar historical regulation
> addressing that problem is relevant evidence that the challenged
> regulation is inconsistent with the Second Amendment. Likewise,
> if earlier generations addressed the societal problem, but did so
> through materially different means, that also could be evidence
> that a modern regulation is unconstitutional. And if some
> jurisdictions actually attempted to enact analogous regulations
> during this timeframe, but those proposals were rejected on
> constitutional grounds, that rejection surely would provide some
> probative evidence of unconstitutionality.

*Id.* at 26-27.

> To be clear, analogical reasoning under the Second
> Amendment is neither a regulatory straightjacket nor a regulatory
> blank check. On the one hand, courts should not "uphold every

modern law that remotely resembles a historical analogue," because doing so "risk[s] endorsing outliers that our ancestors would never have accepted." ***Drummond v. Robinson***, 9 F.4th 217, 226 ([3d Cir.] 2021). On the other hand, analogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster.

***Bruen***, 597 U.S. at 30 (italics in original).

The ***Bruen*** Court concluded that the petitioners, *i.e.*, "two ordinary, law-abiding citizens," were "part of 'the people' whom the Second Amendment protects." ***Id.*** at 31-32. The ***Bruen*** Court further determined that "[t]he Second Amendment's plain text … presumptively guarantee[d the] petitioners … a right to 'bear' arms in public for self-defense." ***Id.*** at 33. Finally, after analyzing "the Anglo-American history of public carry," the Court

conclude[d] that respondents have not met their burden to identify an American tradition justifying the State's proper-cause requirement. The Second Amendment guaranteed to "all Americans" the right to bear commonly used arms in public subject to certain reasonable, well-defined restrictions. ***Heller***, 554 U.S. at 581…. Those restrictions, for example, limited the intent for which one could carry arms, the manner by which one carried arms, or the exceptional circumstances under which one could not carry arms, such as before justices of the peace and other government officials. Apart from a few late-19th-century outlier jurisdictions, American governments simply have not broadly prohibited the public carry of commonly used firearms for personal defense. Nor, subject to a few late-in-time outliers, have American governments required law-abiding, responsible citizens to "demonstrate a special need for self-protection distinguishable from that of the general community" in order to carry arms in public.

***Id.*** at 70.

In **U.S. v. Rahimi**, 602 U.S. 680 (2024), the Supreme Court rejected a Second Amendment challenge to "a federal statute which prohibits an individual subject to a domestic violence restraining order from possessing a firearm if that order includes a finding that he 'represents a credible threat to the physical safety of [an] intimate partner,' or a child of the partner or individual." **Id.** at 684-85 (quoting 18 U.S.C. § 922(g)(8)). Applying the test articulated in **Bruen**, the **Rahimi** Court concluded that "[a]n individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." **Id.** at 702.

Instantly, in his first issue, Appellant argues that sections 6106 and 6108 are unconstitutional as applied to 18-to-20-year-olds, because they criminalize public concealed carry without a license, and section 6109 limits licensure to those aged 21 and older. Appellant's Brief at 7-18. Appellant maintains there was no historical tradition of barring 18-to-20-year-olds from publicly possessing firearms, and consequently the statutory scheme fails the **Bruen** test. **Id.**

Appellant concedes that, in **Commonwealth v. Williams**, 341 A.3d 144 (Pa. Super. July 1, 2025), **appeal granted in part**, 395 MAL 2025, 2026 WL 32609 (Pa. Jan. 6, 2026),[6] a panel of this Court applied the **Bruen** test

_____

[6] On January 6, 2026, the Pennsylvania Supreme Court granted allowance of appeal in **Williams**, with respect to issues involving a **Bruen** challenge to sections 6106 and 6109, as applied to 18-to-20-year-olds. **See Williams**, 2026 WL 32609. **Williams** is currently pending before our Supreme Court.

- 10 -

and rejected an identical challenge to the constitutionality of sections 6106 and 6109, as applied to 18-to-20-year-olds. Appellant's Brief at 7. Though Appellant acknowledges that this Court is "usually bound by a precedential opinion of another panel," *id.* (citing **Sumpter**, 340 A.3d at 983-84), he urges us to "reject the panel holding in **Williams**," which, he contends, applied **Bruen** incorrectly. *Id.* at 8.

As we conclude **Williams** is controlling, we review it in detail. There, Williams was convicted under section 6106 after police found him in possession of a handgun in a vehicle. **Williams**, 341 A.3d at 147. Williams was 19 years old and therefore ineligible to obtain a firearm license under section 6109. *Id.* On appeal, Williams argued sections 6106 and 6109 were unconstitutional as applied to 18-to-20-year-olds. *Id.* at 149-50.

The **Williams** Court engaged in the following **Bruen** analysis:

Here, we conclude that section 6109 is consistent with the nation's historical tradition of firearm regulation. To begin, under the [first step of the] **Bruen** analysis, we have little trouble in saying that Williams'[s] conduct, carrying a firearm in a vehicle, is protected by the Second Amendment. **See Bruen**, 597 U.S. at 32 (reasoning text of Second Amendment encompasses public carrying of firearms).

Turning to the second step, it becomes the Commonwealth's burden to "justify its [regulation] by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." **Barris v. Stroud Twp.**, 310 A.3d 175, 208 (Pa. 2024) (citing **Bruen**, 597 U.S. at 24). The Commonwealth has presented evidence of a historical tradition of individuals aged 18-to-2[0] being prohibited from possessing firearms.

Since before the founding, our nation's state legislatures have categorically disarmed groups judged too dangerous to be

able to safely or responsibly bear arms. As summarized by then-Judge Amy Coney Barrett, "founding-era legislatures categorically disarmed groups whom they judged to be a threat to the public safety." *Kanter v. Barr*, 919 F.3d 437, 458 (7th Cir. 2019) (Barrett, J., dissenting). In the pre-founding-era, Catholics were disarmed for refusing to swear allegiance to the sovereign or independent states, while in the founding-era, slaves and Native Americans were similarly prohibited from possessing firearms because they were perceived as "immediate threats to public safety and stability[.]" *See id.* at 457-58 (citations omitted).

In the 19th century, as guns became more dangerous and accessible, legislatures enacted a variety of prohibitions of the sale and/or the possession of guns by, *inter alia*, "tramps" or "vagrants," persons of unsound mind, and intoxicated persons. At least 29 jurisdictions limited the sale of firearms to, or the possession of firearms by, individuals below a set age.

Aside from legislative prohibitions on certain groups purchasing and/or possessing firearms, the founding-era treatment of 18-to-20-year-olds as minors is likewise weighty evidence of a historical tradition. The founding "generation shared the view that minors lacked the reason and judgment necessary to be trusted with legal rights[,]" and that, accordingly, "infants were subject to the 'power' of their parents until they reached age 21." *See National Rifle Ass'n v. Bondi*, 133 F.4th 1108, 1117 (11th Cir. 2025). Among the legal rights minors lacked at the time of the founding were the right to enter into contracts or sue without joining their guardian. *See Lara v. Comm'r Pennsylvania State Police*, 125 F.4th 428, 449 (3d Cir. 2025) (Restrepo, J., dissenting) [(*Lara II*)]. Further, when founding-era youths went off to college, universities, standing *in loco parentis*, often prohibited students from carrying firearms both on and off campus. *See id.* at 450-51 (discussing founding-era weapons bans at Yale University, University of Georgia, University of North Carolina, and University of Virginia). This understanding of the legal status of minors at the founding and the restrictions on bearing arms to which they were subject lends itself to the conclusion that our nation has a historical tradition of restricting the rights of those aged 18 to 20.

*Williams*, 341 A.3d at 154-56 (original footnotes omitted; some citations modified).

The ***Williams*** Court rejected Williams's arguments as follows:

> Williams'[s] argument against section 6109's constitutionality relies on ***Lara v. Comm'r Pennsylvania State Police***, 91 F.4th 122 (3d Cir. 2024) [(***Lara I***)], and the Second Militia Act of 1792. However, this Court is not bound by the Third Circuit's decisions. ***See Werner v. Plater-Zyberk***, 799 A.2d 776, 782 (Pa. Super. 2002) (providing federal court decisions other than those of United States Supreme Court not binding on this Court). Therefore, the outcome in [***Lara I***], wherein a panel of the Third Circuit held section 6109 unconstitutional, is not determinative in this case.[7]

_____

[7] In ***Lara I***, the Third Circuit held that Pennsylvania's statutory scheme violated the Second Amendment right of 18-to-20-year-olds to engage in **open carry** of firearms during a government-declared state of emergency. ***See Lara I***, 91 F.4th at 127-28, 139-40. "Ordinarily, Pennsylvanians without a concealed-carry license[, including 18-to-20-year-olds,] may carry openly, but [18 Pa.C.S.A.] § 6107(a) … provides that '[n]o person shall carry a firearm upon public streets or upon any public property during an emergency proclaimed by a State or municipal governmental executive[.]'" ***Lara I***, 91 F.4th at 127 (quoting 18 Pa.C.S.A. § 6107(a)). Section 6107 provides exceptions for individuals "actively engaged in a defense," as well as individuals who are licensed to carry firearms under section 6109 or meet one of section 6106(b)'s exceptions. ***Id.*** (quoting 18 Pa.C.S.A. § 6107(a)(1)).

The Third Circuit determined that, "[t]aken together, [sections] 6106, 6107, and 6109—when combined with a state or municipal emergency declaration—have the practical effect of preventing most 18-to-20-year-old adult Pennsylvanians from carrying firearms." ***Id.*** Applying ***Bruen***, the Third Circuit concluded the government failed to meet its "burden of proving that evidence of founding-era regulations supports Pennsylvania's restriction on 18-to-20-year-olds' Second Amendment rights." ***Id.*** at 137. The Third Circuit granted relief in the form of "an injunction forbidding the [police] from arresting law-abiding 18-to-20-year-olds who openly carry firearms during a state of emergency declared by the Commonwealth." ***Id.*** at 140.

The United States Supreme Court subsequently vacated ***Lara I*** and remanded for reconsideration in light ***Rahimi***. ***See Paris v. Lara***, 145 S. Ct. 369 (2024). On remand, the Third Circuit engaged in a substantially similar ***Bruen*** analysis and reached the same conclusion. ***See Lara II***, 125 F.4th at 433-46.

As for the Second Militia Act, Williams conflates a legal obligation or duty imposed on a citizen with a legal right. The Second Militia Act required all "free[,] able-bodied[,] white male citizen[s] … who [are] or shall be of age of eighteen years, and under the age of forty-five years … be enrolled in the militia … [and] provide himself with a good musket or firelock … or with a good rifle[.]" Second Militia Act of 1792. Williams claims that this requirement shows that "18-20[-]year[-]olds were expect[ed] to supply (*i.e.*, possess) their own arms and transport (*i.e.*, carry) them when called to muster for militia duty." Williams's Brief at 40. However, … an obligation is not the same thing as a right— an individual's duty to do something does not mean they have a corresponding, unassailable right to do that thing.

Additional context regarding the manner in which states effectuated the Second Militia Act's requirement that individuals provide their own arms further erodes support for Williams'[s] conclusion. Given the limitations on the legal status of individuals under the age of 21, discussed **supra**, states enacted laws to address minors' inability to procure the required firearms for their service. These laws took various forms: Pennsylvania and Delaware exempted minors entirely from the requirement to provide their own firearms; seven states required parents to acquire firearms for their sons' militia service; and twelve states made parents legally liable if their minor children did not appear for service with the requisite firearms. **See Bondi**, 133 F.4th at 1119-20 (listing statutes). "By 1826, at least 21 of the 24 states admitted to the Union—representing roughly 89 percent of the population—had enacted laws that placed the onus on parents to provide minors with firearms for militia service." **See id.** at 1120 (citation omitted). These supplemental laws are indicative of a founding-era assumption that minors were restricted in their access to firearms.

Going even further, in the latter-half of the 19th century, twenty jurisdictions passed laws restricting firearm access for minors. **See id.** at 1121 (listing statutes). Fifteen jurisdictions "prohibited selling, loaning, or giving dangerous weapons, including pistols," to individuals younger than 21. **Id.** Separately, Kansas went as far as prohibiting individuals younger than 21 from possessing pistols and "other dangerous weapon[s,]" and Nevada prohibited them from "wear[ing] or carry[ing] … dangerous or deadly weapons[,]" such as pistols. **See id.** (citations omitted).

- 14 -

Based upon this history of both common law and statutory restrictions on access to firearms by minors, among other groups, from the pre-founding-era through the latter half of the 19th-century, we find that a national historical tradition exists of restricting firearm access to individuals deemed unable to responsibly bear arms, particularly 18-to-20-year-olds. The "how" and "why" of these laws and section 6109 are likewise analogous. The restrictions burden the right to access and possess firearms (the "how") because the defined group—here, 18-to-20-year-olds—has been judged too dangerous to allow such access (the "why"). Therefore, it follows that section 6109 is constitutional under the standard set out in ***Bruen***.

***Williams***, 341 A.3d at 156-57 (original footnotes omitted; one footnote added; some citations modified).

Instantly, Appellant contends ***Williams*** "was clearly incorrect in holding that there was a historical tradition of barring" 18-to-20-year-olds "from publicly possessing firearms." Appellant's Brief at 8. Appellant maintains the ***Williams*** Court, in its historical analysis, failed to give proper weight to the Second Militia Act. ***Id.*** at 10-11. Appellant points to ***Lara II***, in which the Third Circuit relied on the Second Milita Act as part of its determination that the government had not identified "a single founding-era statute imposing restrictions on the freedom of 18-to-20-year-olds to carry guns." ***Id.*** at 910 (quoting ***Lara II***, 125 F.4th at 444).

***Williams*** is binding on this panel; Third Circuit decisions are not. ***See Commonwealth v. Randolph***, 343 A.3d 1248, 1256 n.4 (Pa. Super. 2025) ("[I]t is beyond the power of a Superior Court panel to overrule a prior decision of the Superior Court, except in circumstances where intervening authority by our Supreme Court calls into question a previous decision of this Court."

- 15 -

(citation omitted)). While this Court may consider federal circuit court decisions for their persuasive value, *see Commonwealth v. Brinkley*, 331 A.3d 85, 95 n.4 (Pa. Super. 2025), the *Williams* Court's reliance on the dissenting opinion in *Lara II* indicates it was not persuaded by the *Lara II* majority. *See Williams*, 341 A.3d at 155 (citing *Lara II*, 125 F.4th at 449-51 (Restrepo, J., dissenting)); *see also id.* at 157 n.23 (citing *Lara v. Comm'r Pennsylvania State Police*, 130 F.4th 65, 72 (3d Cir. 2025) (Krause, J., dissenting from the Third Circuit's denial of the government's petition for rehearing following *Lara II*)).

We observe that *Williams* involved a conviction under section 6106 only. In a non-precedential decision, *Commonwealth v. Carthon*, 346 A.3d 332, 3208 EDA 2022 (Pa. Super. filed Aug. 5, 2025) (unpublished memorandum), a panel of this Court rejected a challenge to the constitutionality of section 6108 as applied to 18-to-20-year-olds, concluding *Williams*'s *Bruen* analysis was dispositive. *Id.* (unpublished memorandum at 4-6).[8]

Instantly, Appellant argues we should deem *Carthon* unpersuasive. Appellant's Brief at 9. Appellant faults *Carthon* for relying on *Williams*'s allegedly incorrect historical analysis, and for not conducting an independent historical analysis under *Bruen*. *Id.* at 8-9. However, Appellant does not

_____

[8] Non-precedential decisions of this Court filed after May 1, 2019, may be cited for persuasive value. *See* Pa.R.A.P. 126(b).

contend that section 6108 calls for a different historical analysis than section 6106 (*i.e.*, that different historical analogues inform the constitutionality of each section).  Indeed, Appellant himself engages in the same historical analysis with respect to both sections.  ***See id.*** at 7-15.

As emphasized above, ***Williams*** is binding on this panel.  We agree with ***Carthon*** that ***Williams***'s ***Bruen*** analysis (with respect to section 6106 as applied to 18-to-20-year-olds) controls the outcome of a constitutional challenge to section 6108 as applied to the same group.  ***See Carthon***, 346 A.3d 332 (unpublished memorandum at 5-6).  Appellant's challenges to sections 6106 and 6108 both hinge on 6109's limitation of licensure to those aged 21 or older, and ***Williams*** concluded that "section 6109 is constitutional under the standard set forth in ***Bruen***."  ***Williams***, 341 A.3d at 157.

For the above reasons, we conclude that ***Williams*** forecloses Appellant's ***Bruen*** challenges to the constitutionality of both sections 6106 and 6108 as applied to 18-to-20-year-olds.  Accordingly, Appellant's first issue merits no relief.

In his second issue, Appellant argues that the Pennsylvania Constitution's right to bear arms provides greater protection than the Second Amendment.  Appellant's Brief at 18 (citing PA. CONST. art. I, § 21 (providing that "[t]he right of the citizens to bear arms in defence of themselves and the State shall not be questioned")).  Appellant concedes this Court's precedent contradicts his claim, but he presents "a truncated argument" in order "to

preserve the issue." *Id.* (citing *Commonwealth v. Mead*, 326 A.3d 1006, 1015 (Pa. Super. 2024)).

We agree with Appellant that we are bound by our prior decision holding that Article I, Section 21 of the Pennsylvania Constitution "does not provide greater protection of the right to bear arms than the Second Amendment[.]" *Mead*, 326 A.3d at 1015 (holding that section 6106's criminalization of unlicensed concealed carry violates neither the Second Amendment nor the Pennsylvania Constitution); *see also Williams*, 341 A.3d at 158-59. As our caselaw is clear that the Pennsylvania Constitution provides no independent basis for relief, Appellant's second issue fails.

In his third issue, Appellant argues section 6108 is facially unconstitutional. Appellant's Brief at 15-18. Though section 6108 provides an exception for those licensed to carry firearms, Appellant argues that non-licensure is not an element of the offense that the Commonwealth must prove; rather, a defendant has the burden of establishing licensure as a defense. *Id.* at 16 (citing *Commonwealth v. Bigelow*, 399 A.2d 392 (Pa. 1979)). Appellant maintains that a defendant's ability to "avoid a conviction if he proves the affirmative defense" of licensure "does not cure the fact that [section 6108] violates the Second Amendment." *Id.* at 17. Appellant argues section 6108 effectively criminalizes all public carry in Philadelphia, regardless of licensure, and is therefore "blatantly unconstitutional" under *Bruen*. *Id.* at 16.

Our review discloses Appellant neither raised this issue before the trial court nor identified it in his Rule 1925(b) concise statement. Apart from his challenge to section 6108 under Article III, Section 32 of the Pennsylvania Constitution, *see* n.3 *supra*, each of Appellant's constitutional challenges below was based on the statutory scheme's application to 18-to-20-year-olds. *See generally* Motion to Dismiss, 10/31/24; Memorandum in Support of Motion to Dismiss, 10/31/24. "Issues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a).

Additionally, Appellant's Rule 1925(b) concise statement only identified issues based on the statutory scheme's application to 18-to-20-year-olds. *See* Appellant's Statement of Errors Complained of on Appeal, 2/13/25. "It is well-established that any issue not raised in a Rule 1925(b) statement will be deemed waived for appellate review." *Commonwealth v. Bonnett*, 239 A.3d 1096, 1106 (Pa. Super. 2020).

The novel argument advanced in Appellant's third issue—that section 6108 is facially unconstitutional because non-licensure is not an element of the offense—was not preserved below and has been raised for the first time on appeal.[9] *See Commonwealth v. Strunk*, 953 A.2d 577, 579 (Pa. Super. 2008) ("Even issues of constitutional dimension cannot be raised for the first time on appeal."); *see also Commonwealth v. Deible*, 300 A.3d 1025, 1035

_____

[9] As this argument was not advanced below, the trial court's opinion did not address it. *See generally* Trial Court Opinion, 7/1/25.

(Pa. Super. 2023) ("[A] new and different theory of relief may not be successfully advanced for the first time on appeal."). The issue is therefore waived.

In his fourth issue, Appellant argues sections 6106 and 6108 violate his right to equal protection under both the United States and Pennsylvania Constitutions. Appellant's Brief at 21-25.[10] Appellant relies on **Sumpter**, in which this Court held that section 6108 was "unconstitutional on an equal protection basis," "insofar as it prohibits the **unlicensed open carry** of firearms on public streets and public property in the city of Philadelphia." **Sumpter**, 340 A.3d at 981, 988 (emphasis added); **see also** Appellant's Brief at 21-25. Incorporating the argument advanced in his third issue, Appellant asserts section 6108 violates equal protection by treating individuals "more harshly in Philadelphia than in the rest of the state." Appellant's Brief at 25. Incorporating the argument advanced in his first issue, Appellant maintains section 6108 violates equal protection by treating 18-to-20-year-olds more harshly in Philadelphia than in the rest of Pennsylvania. **Id.** at 24-25.

_____

[10] **See** U.S. CONST. amend. XIV, § 1 ("No State shall … deny to any person within its jurisdiction the equal protection of the laws."); Pa. CONST. art. I, § 1 ("All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness."); **id.** § 26 ("Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right.").

Initially, we deem the aspect of Appellant's fourth issue which relies on the argument advanced in his third issue to be waived for the same reasons we deem his third issue waived. Additionally, we deem Appellant's fourth issue waived to the extent it challenges section 6106 on equal protection grounds. While Appellant's statement of his fourth question presented mentions section 6106, and his brief incorporates the section 6106 argument made in connection with his first issue, Appellant develops no equal protection argument with respect to section 6106. *See id.* at 21-25; *see also Commonwealth v. Pi Delta Psi, Inc.*, 211 A.3d 875, 884-85 (Pa. Super. 2019) ("When an appellant's argument is underdeveloped, we may not supply it with a better one. In such situations, we shall not develop an argument for an appellant …; instead, we will deem the issue to be waived." (citation, quotation marks, and brackets omitted)); *Commonwealth v. Love*, 896 A.2d 1276, 1287 (Pa. Super. 2006) (observing that an appellant's "brief must contain a developed argument augmented by citation to pertinent authorities. Arguments not appropriately developed are waived." (citing Pa.R.A.P. 2119(a))).

We will address the aspect of Appellant's fourth issue which argues section 6108 violates equal protection as applied to 18-to-20-year-olds. In reviewing Appellant's supporting argument, we are hindered by Appellant's reliance on the argument advanced in connection with his first issue. Appellant's reliance on his first issue's argument makes it difficult to discern

the precise nature of his equal protection claim, which involves different considerations than a **_Bruen_** claim. **_See_** Appellant's Brief at 21-25.

As the **_Sumpter_** Court explained,

> the Equal Protection Clause requires that "all similarly situated persons are treated alike" in the exercise of constitutionally protected rights. **_Small v. Horn_**, 722 A.2d 664, 672 (Pa. 1998). And when presented with an equal protection claim regarding a law that burdens a fundamental right, the law is subject to strict scrutiny. Under strict scrutiny, the Commonwealth must establish that [section] 6108 is "'narrowly tailored' to achieve a 'compelling' government interest." **_Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1_**, 551 U.S. 701, 720 (2007).

**_Sumpter_**, 340 A.3d at 984 (citations modified).

> An equal protection analysis … determine[s] whether a law unfairly discriminates against a particular group of similarly situated persons. Under an equal protection analysis, the validity of the underlying regulation is not _per se_ at issue; the issue is whether the law, regardless of its validity, unfairly discriminates against similarly situated persons subject to the law.

**_Id._** at 987.

In **_Sumpter_**, Sumpter was convicted under section 6108 for openly carrying a firearm in Philadelphia. **_Id._** at 980. Sumpter did not have a license to carry a firearm, nor did he meet any of the section 6106(b) exceptions. **_Id._** at n.1. We held that section 6108 was "unconstitutional on an equal protection basis as applied to [Sumpter]," reasoning as follows:

> The right to keep and bear arms outside the home is a fundamental right protected by the Second Amendment. Section 6108 requires persons who wish to openly carry a firearm on public streets and public property in Philadelphia to obtain a carry license. Open carry without a license is lawful for those 18 years of age and older elsewhere in the Commonwealth but criminal in Philadelphia. Thus, [section] 6108 places persons within the City

of Philadelphia at a special disadvantage in the exercise of their Second Amendment right. The Commonwealth has failed to articulate a compelling interest in support of [section] 6108. Section 6108 fails to pass strict scrutiny and is therefore unconstitutional under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution as applied to [Sumpter].

*Id.* at 988.[11]

Instantly, unlike the defendant in *Sumpter*, Appellant's conviction under section 6108 involved a **concealed** firearm. *See* Exhibit C-28; N.T., 11/8/24, at 10-11, 50. In *Carthon*, we rejected an equal protection challenge to section 6108, as applied to an 18-year-old defendant whose section 6108 conviction involved a firearm "concealed in her purse." *Carthon*, 346 A.3d 332 (unpublished memorandum at 2, 5 n.6). Applying *Williams* and *Sumpter*, the *Carthon* Court reasoned as follows:

In light of *Williams*, Carthon's equal protection argument as to section 6108 must fail. "The essence of the constitutional principle of equal protection under the law is that like persons in like circumstances will be treated similarly." *Commonwealth v. Bullock*, 868 A.2d 516, 524 (Pa. Super. 2005). As the law currently stands, Carthon enjoys the same firearm rights as every

_____

[11] The *Sumpter* Court did not "address the overlap between [sections] 6108 and [] 6106, insofar as both statutes criminalize unlicensed **concealed** carry within the city of Philadelphia and therefore subject violators in Philadelphia to two convictions for that offense." *Sumpter*, 340 A.3d at 981 (emphasis in original). Instantly, to the extent we can discern Appellant's argument, Appellant does not challenge the constitutionality of the overlap between sections 6108 and 6106, which resulted in Appellant's two convictions for unlicensed concealed carry in Philadelphia. *See generally* Appellant's Brief. Our review further discloses Appellant did not raise such a challenge before the trial court. *See generally* Motion to Dismiss, 10/31/24; Memorandum in Support of Motion to Dismiss, 10/31/24. Accordingly, like the *Sumpter* Court, we do not address this aspect of section 6108.

other Pennsylvanian aged 18 to 2[0]: she may openly carry a weapon anywhere in the Commonwealth—including in the City of Philadelphia—but may not obtain a license to carry a concealed weapon until she reaches the age of 21. *See Sumpter*, *supra*; *Williams*, *supra*.

*Carthon*, 346 A.3d 332 (unpublished memorandum at 5-6) (footnote omitted).

*Carthon*'s persuasive reasoning applies equally to Appellant's instant claim. Appellant appears to argue that section 6108 results in 18-to-20-year-old Philadelphians enjoying a lesser right to bear arms than 18-to-20-year-olds located elsewhere in Pennsylvania. *See* Appellant's Brief at 24. But that is not the case where, as here, the conduct involves concealed carry. *See Carthon*, 346 A.3d 332 (unpublished memorandum at 5-6). Accordingly, Appellant's equal protection challenge to section 6108 fails. His fourth and final issue merits no relief.

Judgment of sentence affirmed.

P.J.E. Stevens joins the Opinion.

Judge Lane files a Concurring Opinion.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/1/2026

- 24 -